IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.	3:06cr98/RV
	3:08cv149/RV/MD

TRAVIS GREEN

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 71).  The government filed a response indicating that an evidentiary hearing was necessary to resolve defendant's claims. (Doc. 75).  The court scheduled an evidentiary hearing for August 21, 2008 on counsel's alleged failure to consult with defendant regarding an appeal or to have filed an appeal after having been requested to do so.  Assistant Federal Public Defender Randall Lockart was appointed to represent the defendant for purposes of the hearing.  At this hearing, the defendant indicated on the record, both personally and through counsel, that he wished to withdraw his claim and dismiss his § 2255 motion.  Although perhaps unnecessary in light of the defendant's motion, the court will still set forth the background of this case as reflected in the record.

**I. BACKGROUND**

Defendant was charged in a two count indictment with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and possession with intent to distribute 500 grams or more of cocaine on a date certain.  (Doc. 20). The government filed a pleading entitled Enhancement Information, to put the court and

defendant on notice that the defendant was subject to increased penalties under Title 21 due to his three prior felony drug convictions.  (Doc. 31).  The defendant, represented by appointed counsel E. Brian Lang, signed a written plea and cooperation agreement pursuant to which he pleaded guilty as charged.  (Doc. 51-53).

The plea agreement provided in part that the defendant faced a mandatory minimum term of life imprisonment on Count One.  (Doc. 53 at 2).  The court also specifically told the defendant at the rearraignment proceeding that he faced this mandatory minimum term because of the enhancement.  (Doc. 74 at 15-16).  Defendant admitted that he had dealt with in excess of five kilograms of cocaine during the course of the conspiracy, and had done what he was charged with in the indictment.  (Doc. 74 at 23-24).  The court advised the defendant that the serious penalties he faced were set out by statute, but that the sentencing guidelines could also come into play.  He asked whether the defendant had discussed how both the statutory minimum mandatories and the sentencing guidelines might apply in his case.  (*Id.* at 24).  Defendant stated that to the best of his knowledge "the life sentence may be overturned because I was like 17 when I got those charges" and he appeared to indicate that the priors may not have been separate incidents.  (*Id.* at 25).  The court conceded that there is always some question about whether enhancement convictions are countable, and as such it could not tell the defendant whether in his particular case the convictions were countable or not, and again asked defendant whether he had discussed these issues with counsel.  (*Id.*).  Defendant indicated that he had, and that he understood the complexity of factors that entered into a sentencing guidelines calculation.  (*Id.* at 25-26).

The presentence investigation report set the defendant's base offense level at 32. (PSR ¶ 29).  Defendant received a four level upward adjustment due to his role in the offense (PSR ¶ 32) and a three level downward adjustment for acceptance of responsibility due to his timely plea of guilty.  (PSR ¶ 35).  Defendant was determined to be a Career Offender under guideline § 4B1.1(A), such that his base offense level was 37, and his total offense level was 34 after the acceptance of responsibility adjustment.  (PSR ¶¶ 37, 46). With a criminal history category of VI due to his Career Offender status, the applicable

guidelines imprisonment range was 262 to 327 months. This range was trumped by the statutory mandatory minimum of life. Neither the government nor the defendant filed objections to the PSR. (PSR ¶ 103).

At sentencing, when the court asked defendant whether he had received a copy of his PSR, carefully reviewed it and gone over it with his attorney, defendant stated that he was "just witnessing it this morning." (Doc. 70 at 2). The court asked him whether it was accurate, to which defendant responded to the effect that it appeared to be except for the two convictions he had from when he was eighteen years old that he believed should have been reflected as a single charge. (*Id.* at 2-3). He then explained that counsel showed it to him when counsel came to speak with him that morning, that counsel was unaware that the defendant had not received it before then, but that counsel had read the report to him. (*Id*. at 3). The court took a brief recess so the defendant could read the report on his own. (*Id.* at 3-4). After the recess, defendant indicated that he had read the report and had not found any factual errors except with respect to the two priors. (*Id.* at 4-5). The court then took up the matter of the Enhancement Information and advised the defendant that any challenge to the validity of the convictions for purposes of the enhancement had to be made before the imposition of sentence, or he would not be able to challenge them later. (*Id.* at 5). Defendant admitted the first charge, but initially disputed whether the second charge should be counted as a separate conviction. After discussion, the court and counsel concurred that the cases should be counted separately, but that in any event it was a moot point because only two convictions were required to trigger the mandatory life sentence, and defendant had three. (*Id.* at 5-8).

The court noted defendant's guidelines sentence of 262 to 327 months was trumped by the statutory mandatory minimum, but also noted that it was authorized to depart from both the mandatory life sentence and the applicable guidelines range because the government had filed a § 5K1.1 motion. (Doc. 70 at 8). Counsel spoke at length urging leniency in his client's behalf because the defendant's prior convictions had been relatively remote in time, he had promptly cooperated with the government, and he had significant

family support.  Defendant also spoke in his own behalf.  (*Id.* at 9-11).  The court imposed a sentence of 234 months imprisonment.  (*Id.* at 13).

Defendant was advised of his appellate rights, including the fact that the notice of appeal must be filed within ten days and that upon request the clerk would file a notice of appeal for him.  (Doc. 70 at 14-15).  Defendant did not appeal, and it was this lack of appeal that was the subject of the instant motion.

## II. LEGAL ANALYSIS

If a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal. *Id.*; *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).  However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.  We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal.  *See supra* 1034-1035.  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035; see also *Thompson v. United States*, 481 F.3d 1297, 1300 (11th Cir. 2007). The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known . . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480, 120 S.Ct. at 1036; see also *Devine v. United States*, 520 F.3d 1286 (11th Cir. 2008) (finding counsel had no affirmative duty to consult with defendant about an appeal where defendant was sentenced at the bottom of the Sentencing Guidelines range after pleading guilty and waiving right to appeal); *Thompson v. United States,* 504 F.3d 1203, 1208 (11th Cir. 2007) (defendant dissatisfied with perceived disparate sentence met burden of showing he would have wanted to appeal); *Otero v. United States*, 499 F.3d 1267 (11th Cir. 2007) (defendant who received sentence at low end of predicted guidelines range and had not expressed desire to appeal failed to show prejudice).

In cases where a defendant has not specifically instructed his counsel to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must demonstrate a reasonable probability exists that, but for counsel's deficient performance, he would have timely appealed. *Flores-Ortega,* 120 S.Ct. at 1038, 1040; *Thompson v. United States*, 481 F.3d 1297, 1301 (11th Cir. 2007). "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination." *Flores-Ortega*, 120 S.Ct. at 1039. However, "[b]ecause a direct appeal of a federal conviction is a matter of right, see *Rodriquez v. United States*, 395 U.S. 327, 329-330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), we determine whether a defendant has shown that there is a reasonable probability that

he would have appealed without regard to the putative merits of such an appeal." *Thompson v. United States,* 481 F.3d 1297, 1302 (11th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 485-86, 120 S.Ct. 1029; *Gomez-Diaz*, 433 F.3d at 793).

The Eleventh Circuit has stated that the proper procedure when an out of time appeal is warranted is: (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is ten days, which is dictated by Rule 4(b)(1)(A)(I). *United States v. Phillips,* 225 F.3d 1198, 1201 (11th Cir. 2000); *United States v. Parrish*, 427 F.3d 1345, 1347 (11th Cir. 2005).

Defendant submitted an affidavit in support of his motion in which he states, among other things, that he told counsel on the date of his sentencing that he wanted to appeal "because of the long sentence [he] received." (Doc. 71, exh. 5). Counsel told the defendant that he would "get in touch" with him. (*Id.*) Defendant asserts that he did not have an opportunity to thoroughly review his PSR during the ten minute period allotted by the court, and that it was only after reviewing the report after a few days that he realized "some of the information was incorrect," although he does not identify the allegedly incorrect information. (*Id.*). Defendant asserts that counsel never consulted with him about appealing, either before or after the sentencing. Defendant details his efforts to communicate with counsel, stating that after he returned to the detention center on an unspecified date he called his fiancee and asked her to contact counsel to tell him to file an appeal, that he wrote counsel a letter the day after sentencing asking him to appeal, that he wrote counsel a letter "several days later" asking about the appeal and ultimately wrote yet another letter to counsel again asking about the appeal, but that he received no response. He states that he then knew that counsel had not filed his appeal as requested. and he wrote counsel requesting that he send the defendant all the discovery in his case, and counsel sent him the indictment, plea agreement and 5K1 motion for reduction of sentence. (*Id.*).

The affidavit of defendant's fiancee DeKesha Tillman was also submitted in support of defendant's motion.  (Doc. 71, exh. 4).  Ms. Tillman indicates that after sentencing she asked counsel about appealing defendant's sentence and counsel stated that he would "check into it."  Later in the same day, the defendant called her asking her to tell counsel to appeal his case.  Ms. Tillman immediately called counsel's office and spoke to Mr. Lang's secretary, who stated that counsel would call her back.  When she did not receive a call back, Ms. Tillman called Mr. Lang's office 4 or 5 times, each time telling counsel's secretary that the defendant wanted to appeal his case.  Each time she was told that counsel would call her back, but he never returned her calls.  (*Id.*)

Mr. Lang submitted an affidavit in support of the government's response.  (Doc. 75, att. A).  In this affidavit, counsel states that he has no recollection of the defendant requesting that he file an appeal.  He notes that it is his practice to discuss the issue of an appeal after sentencing, and he does not doubt that he discussed the issue of appeal with his client as is his practice.  He noted that he has appealed many cases in federal court and he has no reluctance to file an appeal on behalf of a client if he expressed that desire either verbally or in writing.  Counsel notes that in several letters that defendant sent to the court and the AUSA after sentencing, defendant did not mention an appeal, but only a request for a Rule 35.  Mr. Lang admits having received numerous phone messages from Ms. Tillman on defendant's behalf, but none since the April 18, 2007 sentencing, and he denies having received any correspondence from the defendant specifically requesting that he file an appeal.  (*Id.*).  Because of the stark factual conflict in the positions of defendant and of his former counsel, the court scheduled an evidentiary hearing.

The commencement of the hearing scheduled for August 21, 2008 was slightly delayed so the government could provide discovery to defendant and his appointed attorney Assistant Federal Public Defender Randall Lockhart.[1]  When the hearing began, Mr. Lockhart announced on behalf of his client that his client wished to withdraw his claim.  Because the claims that were the subject of the hearing were the only claims raised in the

---

[1] The Assistant United States Attorney had requested permission to use a laptop computer to play an audio recording of a telephone conversation taped while defendant was in custody.

*Case No: 3:06cr98/RV; 3:08cv149/RV/MD*

§ 2255, the court made further inquiry of defendant Green, who stated on the record that he wished to withdraw his claim and to orally move to dismiss his § 2255 motion.  He clearly understood that this would mean an end to the proceedings in this case.  The court finds that defendant's request was made after consultation with counsel, and good cause has been shown for his motion to be granted.

Based on the foregoing, it is respectfully RECOMMENDED:

The defendant's oral motion to dismiss his motion to vacate, set aside, or correct sentence be GRANTED and said motion (doc. 71) be DENIED with prejudice.

At Pensacola, Florida, this 21st day of August, 2008.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:06cr98/RV; 3:08cv149/RV/MD*